RICHARD C. STONE vs. WETHERBEE CHAMBERLAIN.

*Audita querela* lies by a person imprisoned under an execution in which, by a mistake of the clerk, the date of the judgment is erroneously stated, and the officer thereby required to collect more interest than is due.

A writ of *audita querela*, improperly called in the declaration an action of tort, may be amended by striking out those words.

A writ of *audita querela*, brought by a person imprisoned under an execution in which the date of the judgment was stated two months earlier than the truth, and the officer thereby required to collect about ten dollars too much interest, was denominated in the declaration an action of tort. *Held*, that the plaintiff might amend, on condition that he would take judgment for nominal damages only.

AUDITA QUERELA.  In the writ, Chamberlain was summoned "to answer unto the grievous complaint of" Stone "in an action of tort, who complaineth and saith that" Chamberlain on the 3d of March 1854 sued out of the clerk's office of this court a writ of execution in favor of Chamberlain against Stone for the sum of $917.68 costs of suit, for which, as stated in said execution, judgment was rendered on the 2d Tuesday of October 1851, to wit, the 30th day of December 1851, and was on the 7th of March 1852 delivered by Chamberlain to a deputy sheriff for service, and was served on the same day by arresting Stone at Sherburne, and carrying him to Cambridge, and committing him to jail, and returned to the court.

The declaration then averred that no judgment, as stated in said execution, was ever rendered by the court; that Chamberlain did recover judgment against Stone on the 2d Tuesday of October 1851, to wit, on the 1st of March 1852, as appeared by the records of the court, now in full force and unreversed, for said sum of $917.68 costs of suit; and that no other judgment than that was ever rendered by said court in favor of Chamberlain against Stone. The declaration concluded by averring that, in consequence of said arrest and imprisonment, the plaintiff was put to great trouble and expense, compelled to pay large sums of money, and greatly distressed both in body and mind; and praying that said execution might be set aside and cancelled, and all proceedings under the same stayed and vacated.

The defendant pleaded not guilty, and a hearing was had before *Bigelow*, J., who reserved the case upon the following report:

The defendant moved that the writ be quashed, because it was described in the declaration as "an action of tort." But the judge allowed the plaintiff to amend the declaration in this particular, and overruled the motion.

The plaintiff gave in evidence the extended record of this court in the former action, by which it appeared that judgment was rendered in favor of Chamberlain at October term 1851 for the sum of $917.68 costs of suit; and proved by the docket of actions at that term that the judgment was rendered on the sixty-first day of the term, which was the 1st of March 1852, the sixtieth day being the 30th of December 1851; and also put in an alias execution for costs in said action, in favor of Chamberlain against Stone, in which said judgment was stated to have been rendered on the 2d Tuesday of October 1851, "to wit, on the thirtieth day of December 1851," and the sheriff was directed to collect said sum of $917.68, "with interest thereon from said thirtieth day of December."

The wrong, for which the plaintiff sought to maintain this writ, was, that through the error of the clerk, in making up said execution, he was required to pay interest on said judgment from the 30th of December 1851, instead of from the 1st of March 1852.

It was admitted that the plaintiff was arrested on said execution and committed to jail on the 7th of March 1854, and was enlarged on the same day, by giving a bond for the prison limits; that he was surrendered to the custody of the jailer on the fourth day of April following, and was on the same day enlarged upon the suing out of the present writ, upon giving bonds in compliance with the provisions of the statute, under an order of one of the justices of this court.

Upon these facts, the defendant contended that the evidence did not support the issue; and that the writ of *audita querela* was not the proper remedy for the error and wrong of which the plaintiff in his suit complained.

The defendant also moved that the original record in the for-
mer case be now amended, by order of the court, so as to state
the true time of the rendition of said judgment, and that said
execution be amended, to conform to the judgment.

If the court are of opinion that the plaintiff should be allowed
to amend his writ as above stated, and that this writ can be
maintained on the foregoing facts, or, after an amendment of
the record and execution, (if the court are of opinion that such
amendment is competent to affect the proceedings in this case,
and ought to be allowed,) such judgment is to be rendered in
favor of the plaintiff as law and justice may require; otherwise,
the plaintiff is to become nonsuit.

*G. A. Somerby*, for the plaintiff. 1. The form of the writ in
this case is substantially as heretofore used, with the exceptions
of the words, " in an action of tort; " *St.* 1780, *c.* 47, § 4; and
may be amended by striking out those words. *St.* 1852, *c.* 312,
§ 32.

2. An execution must state the time of rendition of judg-
ment, which must be paid with interest from that time. *St.*
1847, *c.* 153. The error complained of is not in the judgment,
but in the execution; which is issued under the general author-
ity of the clerk, and is no part of the judgment. *Johnson* v.
*Harvey*, 4 Mass. 483. The party who takes out the execution
is bound to see that it is correct, before he undertakes to im-
prison the other party under it. An amendment of the execution
cannot take away the plaintiff's right of action for the false
imprisonment.

3. *Audita querela* is the proper remedy for a mistake in issu-
ing the execution, by which a party is unlawfully imprisoned;
and is the only full remedy, to enlarge the party, and give him
damages for the false imprisonment. It is not necessary to
show fraud, in order to support this writ. Rev. Sts. *c.* 112,
§§ 1–9. *Johnson* v. *Harvey*, 4 Mass. 483. *Brackett* v. *Winslow*,
17 Mass. 153. *Coffin* v. *Ewer*, 5 Met. 232. A motion to set
aside or amend the execution would give the plaintiff no dam-
ages. So of a writ of *habeas corpus*.

*B. F. Butler*, for the defendant. 1. The amendment from " an

action of tort," which it was not, to a proper form of writ, was an entire change of the action, and ought not to have been allowed; at least, without an amendment of the defect in the execution, which was all that was complained of.

2. If the *St.* of 1852, *c.* 312, § 32, applies to the amendment asked for by the plaintiff, it does to the amendment requested by the defendant; and, that being made, the record and execution stand together, and the action cannot be maintained. The error is a misprision of the clerk, which will never be allowed to affect the rights of parties. Therefore judicial writs might always be amended, without any statute of jeofails. Vin. Ab. Amendment, K, L. *O'Driscoll* v. *McBurney*, 2 Nott & McCord, 58. *Digges* v. *Dunn*, 1 Munf. 56. *Mechanics' Bank* v. *Minthorne*, 19 Johns. 244. *Dowey* v. *Ten Eyck*, Penning. 1023. And this, where the record is of the same court, even after error brought. *Hutchinson* v. *Crossen*, 10 Mass. 252. *Herbert* v. *Hardenbergh*, 5 Halst. 222. *Tatem* v. *Potts*, 5 Blackf. 534. *Beard* v. *Young*, 2 Overt. 54. And although the error will thereby be defeated. *Colby* v. *Moody*, 19 Maine, 111. See also *Pratt* v. *Wheeler*, 6 Gray, 520. A mistake in statement of time, if immaterial, will not support error; if material, then the cause in error will be continued to have it amended. *Tebbetts* v. *Dowd*, 23 Wend. 379.

3. *Audita querela* cannot be maintained for the supposed defect. On this writ, the equitable rights of parties will be ascertained, and equitable remedies afforded for the wrongful action of a party. There must be some element of fraud or oppression to sustain the writ. *Lovejoy* v. *Webber*, 10 Mass. 103. *Brackett* v. *Winslow*, 17 Mass. 158. *Coffin* v. *Ewer*, 5 Met. 228. *Faxon* v. *Baxter*, 11 Cush. 36. It will not therefore lie to correct an error of the clerk, without the knowledge of the party. That should be corrected by motion, with less delay and expense. *Bank of United States* v. *Jenkins*, 18 Johns. 305. *Smith* v. *Rix*, 9 Verm. 241. *Coffin* v. *Ewer*, 5 Met. 228.

The only error complained of is a call for a slight excess of interest, which may be cured by remitting the excess, and the writ may be dismissed. *Edmondson* v. *King*, 1 Overt. 425.

18*

METCALF, J.   A writ of *audita querela* is improperly denomi-
nated an action of tort; but the plaintiff may amend, on con
dition that he will take judgment for nominal damages only
against the defendant.

*The plaintiff took judgment accordingly.*

### DAVID KENDALL *vs.* ADOLPHUS BROWN.

A deed from all the heirs of J. S. of " all the right, title and interest of us and each of us
in and to" certain land described by metes and bounds, " hereby quitclaiming all our
right, title and interest in and to all the real estate situated in W., owned by J. S. at the
time of his decease, reserving however, from the operation of this conveyance, all of
that portion of said estate included in the above description which was set off to H. S.
as her dower," with covenants against " all incumbrances made or suffered by us or
either of us respectively," and of special warranty, does not pass the right derived by
one of the grantors, by a prior and independent title, and as appurtenant to other land, to
maintain a dam and reservoir on the land granted, for the support of a mill on such
other land.

ACTION OF TORT for removing a dam erected by the plaintiff
upon the defendant's land.   The defendant admitted the re-
moval; and the question of his right to remove it was submitted
to the decision of the court upon the following facts :

The land upon which the plaintiff's mill stands, together with
the mill, and the privilege appurtenant thereto, was conveyed by
John Eaton on the 4th of March 1819 to Josiah Kendall and
the plaintiff, who in 1820 erected a new mill in the place of the
old one, upon the same site.   In 1830, Josiah conveyed all his
interest therein to the plaintiff.   Before the conveyance from
Eaton, and ever since that conveyance, the owners or occupants
of the mill have maintained and kept in repair a dam upon the
defendant's land, three quarters of a mile above their mill, on the
same stream, for the purpose of creating a reservoir for the sup-
ply of the mill, by flowing the lands of the defendant and of
other persons above that dam.   The land of the defendant, thus